# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### KNOXVILLE DIVISION

| | |
|---|---|
| STACY VICKERY,<br>Individually and on behalf of<br>all others similarly situated,<br>Plaintiff, | )<br>)<br>)<br>) |
| | ) |
| vs. | ) |
| | )   Case No. _____ |
| LUMBER LIQUIDATORS, INC., | ) |
| LUMBER LIQUIDATORS LEASING, LLC, | )   CLASS ACTION COMPLAINT |
| LUMBER LIQUIDATORS HOLDINGS, INC.; | ) |
| LUMBER LIQUIDATORS SERVICES, LLC, | )   **JURY TRIAL DEMANDED** |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

Plaintiff, STACY VICKERY, on behalf of himself and all other similarly situated nationwide, hereby files this Class Action Complaint against Defendants, Lumber Liquidators, Inc., a Delaware corporation; Lumber Liquidators Leasing, LLC, a Delaware limited liability corporation; Lumber Liquidators Holdings, Inc., a Delaware corporation; and Lumber Liquidators Services, LLC, a Delaware limited liability corporation (all Defendants are collectively referred to as "Lumber Liquidators") for the damages caused by dangerously defective composite laminate flooring products and/or engineered wood flooring products (collectively "Flooring Products") containing unacceptably high, toxic levels of formaldehyde, a known carcinogen. In support thereof, Plaintiff states as follows:

1.     This is a class action brought by Plaintiff on behalf of himself and all persons and/or entities ("Class") who purchased Flooring Products produced in China that were manufactured for Lumber Liquidators and that contain excess amounts of formaldehyde ($CH_2O$).

Exposure to the dangerously defective Flooring Products places the Plaintiff and all other purchasers of these Flooring Products at risk of serious harm, illness or death.

## PARTIES

### Plaintiff

2.  Plaintiff Stacy Vickery is a resident and citizen of Clinton (Anderson County), Tennessee. In 2013, he purchased approximately 1,400 square feet of "St. James Nantucket Beech 12 mm Laminate Flooring" from Lumber Liquidators to have installed in his personal residence.

3.  Lumber Liquidators manufactured, distributed, and sold this Flooring Product under the "Dream Home" brand name.

4.  Mr. Vickery purchased the dangerously defective Flooring Product upon his belief that this type of flooring would improve his health. Prior installing the Flooring Product, Mr. Vickery had two lung surgeries and was aware that his existing home carpeting could exacerbate his breathing and lung problems.

5.  After he installed the Flooring Product, Mr. Vickery noticed that his upper respiratory problems were aggravated rather than reduced. Soon afterwards, he first learned from the "60 Minutes" episode on CBS News that the Lumber Liquidators had been manufacturing and distributing Flooring Products that contained excess amounts of formaldehyde.

6.  Since viewing the "60 Minutes" episode about the investigation of Lumber Liquidators, Mr. Vickery's aggravated symptoms might indicate he is in greater jeopardy if he leaves the dangerously defective Flooring Product installed in his home, even though it is has only been installed less than two years.

7.  Mr. Vickery would not have purchased and installed the dangerously defective

Flooring Product had he known it was manufactured with dangerously high levels of formaldehyde.

**Defendants**

8.      Lumber Liquidators was founded in 1994 and our initial public offering was in November 2007.  Its stock trades on the New York Stock Exchange under the symbol "LL."

9.      The company operates in a holding company structure with Lumber Liquidators Holdings, Inc. serving as the parent company and certain direct and indirect subsidiaries, including Lumber Liquidators, Inc., Lumber Liquidators Services, LLC and Lumber Liquidators Canada Inc., conducting the operations. Lumber Liquidators Holdings, Inc. is a Delaware corporation with headquarters in Toano, Virginia.

10.      Lumber Liquidators has a number of brand name trademarks registered in the United States, including Lumber Liquidators®, Hardwood Floors For Less!®, Bellawood®, 1-800-HARDWOOD®, 1-800-FLOORING®, Dura-Wood®, Quickclic®, Dream Home Laminate Floors®, Builder's Pride®, Schön Engineered Floors®, Casa de Colour Collection® and other product line names.

11.      As of December 31, 2014, Lumber Liquidators had 352 stores throughout the United States and Canada, 166 of which were opened after January 1, 2010.

12.      Defendant Lumber Liquidators is a manufacturer, packager, marketer, and seller of flooring products including but not limited to manufactured composite laminate flooring and engineered wood flooring, which are both marketed by the company for residential and light commercial use in North America.

13.      At all times relevant to this Complaint, Lumber Liquidators was registered within the State of Tennessee as a foreign limited liability company and transacted business within the

State by distributing and selling its products to Tennessee consumers. The company first registered with the Tennessee Secretary of State on September 25, 2007.

<u>JURISDICTION AND VENUE</u>

14.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).  The matter in controversy in this class action exceeds $5,000,000.00, exclusive of interest and costs, and Plaintiff and some members of the Class are citizens of states other than the state in which Lumber Liquidators is incorporated and are citizens of states other than where the Lumber Liquidators has its primary place of business.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(c) because (i) Plaintiff Stacy Vickery resides in this district; and (ii) Lumber Liquidators regularly transacts business in this District and has continuous and systematic contacts with this State through the sale of Flooring Products in Tennessee.

<u>NATURE OF THE CLAIMS</u>

<u>Flooring Products</u>

16.     At all relevant times hereto, Lumber Liquidators was in the business of designing, manufacturing, packaging, marketing, selling and/or distributing, *inter alia*, various types of composite laminate and engineered wood flooring.  Lumber Liquidators knew and intended that its wood flooring products would be purchased by persons and/or entities throughout the United States.

17.     According to its own website, "At Lumber Liquidators, we negotiate directly with the mills, eliminating the middleman and passing the savings on to the customers."[1] All of the brands Lumber Liquidators sells are its own proprietary brands.

---

[1] http://www.lumberliquidators.com/sustainability/about/ (last viewed 3/11/2015).

18.     The Flooring Products, which were manufactured, packaged, and labeled under the direct supervision and control of Lumber Liquidators, emit toxic levels of formaldehyde, are non-compliant with the maximum levels of formaldehyde allowed by the California Air Resources Board ("CARB"), a standard which is in the process of being adopted by the Environmental Protection Agency ("EPA") for the entire United States.

19.     For at least two years, Lumber Liquidators knew that the core boards of the Flooring Products exceeded levels of formaldehyde considered to be safe by the EPA for indoor air quality, but falsely labeled the Flooring Products as being compliant with all CARB standards.

20.     Laminate and engineered wood flooring products are generally composed of a base layer of pressed composite wood (particle board or medium-density fiberboard), which is manufactured by mixing sawdust or wood particles with a glue or resin.  The base layer is later covered with a thin layer of wood veneer (generally sold as "engineered wood flooring") or another material upon which a photographic image of wood or other texture appears (generally sold as "laminate flooring"). Both products are similarly produced and similarly installed.

21.     Formaldehyde ($CH_2O$) is a common ingredient in glue used in the base layer of laminate and engineered wood flooring. If the manufacturing process includes low levels of formaldehyde, any residual formaldehyde gas quickly dissipates before or during installation of the flooring.

22.     However, when high levels of formaldehyde are used during the manufacturing process, excess formaldehyde continues to be released as a gas over a long period of time. Prolonged exposure to formaldehyde gas is directly linked to increased human health risks, as discussed in more detail below.

23.    In 2015, the CBS News Program "60 Minutes" conducted an independent investigation of Lumber Liquidators related to its Chinese-made Flooring Products. The "60 Minutes" investigators purchased various Flooring Products from Lumber Liquidators and had them tested to determine whether they were in compliance with the CARB standards shown on their own labels. Some of the Flooring Products had as much as *twenty times* the CARB levels for which they were advertised.[2]

24.    "60 Minutes" investigators posed as buyers and visited three mills in China which produce the Flooring Products. According to the report:

> Employees at the mills openly admitted that they use core boards with higher levels of formaldehyde to make Lumber Liquidators laminates, saving the company 10-15 percent on the price. At all three mills they also admitted falsely labeling the company's laminate flooring as CARB 2, meaning it meets California formaldehyde emissions standards, and the new U.S. federal law. At [one] factory, the general manager told investigators Lumber Liquidators is one of their biggest customers.
>
> Manager: 'This is a best-seller for Lumber Liquidators.' . . .
> Investigator: 'Is this CARB 2?'
> CARB 2 means it's compliant with California law. But listen to what the general manager told us.
> Manager: 'No, no, no... I have to be honest with you. It's not CARB 2.'
> Investigator: 'Can I get CARB 2?'
> Manager: 'Yes, you can. It's just the price issue. We can make CARB 2 but it would be very expensive.'[3]

25.    Upon information and belief, the use of higher formaldehyde glues and resins reduces both the overall costs and manufacturing time when compared to low formaldehyde products. These cost savings benefit Lumber Liquidators through a reduction of both labor and material costs.

---

[2] http://www.cbsnews.com/news/lumber-liquidators-linked-to-health-and-safety-violations/ (most recently viewed on 3/11/2015).

[3] *Id.*

26.     Labeling on the Flooring Products indicate they comply with strict formaldehyde emission standards promulgated by CARB by stating: "California 93120 Phase 2 Compliant Formaldehyde."

27.     In 2013 and 2014 three accredited laboratories tested the formaldehyde emissions of laminate and engineered wood flooring from several nationwide retail outlets, including Home Depot, Lowe's, and Lumber Liquidators. Of the flooring tested, by far the highest formaldehyde levels were found in Chinese-manufactured Flooring Products sold by Lumber Liquidators. In comparison, Lumber Liquidators' flooring that was manufactured in North America was generally compliant with the CARB standards. Lumber Liquidators' competitors' flooring also complied with the CARB standards.

28.     Lumber Liquidators fails to warn consumers about the dangerously high formaldehyde levels in its Flooring Products, despite its knowledge that they do not comply with the formaldehyde emission standards required by the EPA in the United States. Even worse, it intentionally misrepresents on the Flooring Products' labels that they are CARB compliant.

29.     Likewise, Lumber Liquidators' website falsely states that its Flooring Products comply with CARB standards.

> Though CARB applies only to products sold in California, Lumber Liquidators *requires all suppliers delivering products containing composite wood components to comply with CARB requirements* regardless of whether we intend to sell the products in California or any other state or country. Although the U.S. Environmental Protection Agency has drafted national standards for composite wood products that are similar to the CARB standard, those standards have not yet been enacted. Until that time, *Lumber Liquidators believes that applying the rigorous California standard throughout North America is the right thing to do*.[4]  (Emphasis added).

---

[4] http://www.lumberliquidators.com/sustainability/health-and-safety/ (last viewed 3/11/2015).

30.     Although Lumber Liquidators claims to comply with CARB requirements, its own Annual Report filed with the SEC admits that it is not certain of the actual manufacturing facilities' compliance.

> While our suppliers agree to operate in compliance with applicable laws and regulations, including those relating to environmental and labor practices, we do not control our suppliers. Accordingly, ***we cannot guarantee*** that they comply with such laws and regulations or operate in a legal, ethical and responsible manner.[5] (Emphasis added).

31.     Upon information and belief, most if not all of the Flooring Products manufactured and packaged in China for Lumber Liquidators do not meet the CARB standards for which the products are labeled, in order to reduce their production costs. This mislabeling, upon information and belief, is intentional, willful, carried out at the direction of Lumber Liquidators, and in total disregard for the health and safety of consumers like the Plaintiff and members of the Class.

32.     Lumber Liquidators' Flooring Products come with a warranty stating that the customer's purchase complies "with all applicable laws, codes and regulations," and "bear all warnings, labels, and markings required by applicable laws and regulations."

33.     Lumber Liquidators materially misrepresents the safety of its Flooring Products by advertising and representing that they are compliant with the California CARB limits for formaldehyde emissions when in fact, they are not.

---

[5] Lumber Liquidators Annual Report, filed on February 25, 2014, p. 14 (emphasis added). *See* http://investors.lumberliquidators.com/index.php?o=25&s=127. On page 5 of the Annual Report, Lumber Liquidators acknowledges that it oversees quality control in its Chinese mills: "We are able to set demanding specifications for product quality and our own quality control and assurance teams are on-site at the mills, coordinating inspection and assurance procedures." *Id*.

34.     Lumber Liquidators fails to tell unsuspecting consumers that the Flooring Products place the consumers and their families at risk for health problems including cancer, which research shows to be associated with prolonged exposure to formaldehyde.

35.     Upon information and belief, Lumber Liquidators continues to manufacture, package, market, and sell Flooring Products which do not comply with the CARB standards for which they are falsely labeled.

**<u>Health Risks</u>**

36.     The dangerous levels of formaldehyde in the Flooring Products places the Plaintiff and Class at an increased risk of various illnesses, including cancer.  Additionally, the excessive levels of formaldehyde found in the Flooring Products can cause burning eyes and nose, coughing, and dizziness.  These health risks are increased for children and the elderly.

37.     Research indicated prolonged exposure to formaldehyde increases the risk to humans for nasopharyngeal and oropharyngeal cancer, lung cancer, and leukemia. It has also been linked to the exacerbation of asthma.

38.     According to the Centers for Disease Control, "[s]cientific research has not yet shown that a certain level of formaldehyde exposure causes cancer. However, *the higher the level and the longer the exposure*, the greater the chance of getting cancer. Exposure to formaldehyde might increase the chance of getting cancer even at levels too low to cause symptoms."[6] (Emphasis added).

39.     Lumber Liquidators knows about the unreasonably high amounts of formaldehyde and the mislabeling of its Flooring Products. It is also aware of the risks associated with high levels of formaldehyde.  Nevertheless, Lumber Liquidators fails to disclose these material facts

---

[6] http://www.cdc.gov/nceh/drywall/docs/whatyoushouldknowaboutformaldehyde.pdf

to purchasers of its dangerously defective Flooring Products like the Plaintiff and the members of the Class.

40.     Lumber Liquidators' unconscionable conduct has caused damages and personal injuries to Plaintiff and the members of the Class.  As a result of Lumber Liquidators' manufacture and distribution of dangerously defective Flooring Products, Plaintiff and the Class members are required to pay hundreds, or even thousands, of dollars in costs to diagnose and treat their associated medical problems, and to remove and replace the Flooring Products from their homes and businesses.

41.     Inaccurate and fraudulent statements related to the quality of the Flooring Products were made by Lumber Liquidators and have been published on its website throughout the Class Period. These inaccurate and fraudulent statements were made for the purpose of inducing, and were likely to induce, directly or indirectly, the purchase of the dangerously defective Flooring Products, and as such constitute false advertisement in violation of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C § 52.  Lumber Liquidators' statements were accessible to consumers including the Plaintiff and the Class, as well as by persons who made flooring purchase decisions on the consumers' behalf or who assisted them in making their flooring purchasing decisions, including contractors, builders and subcontractors.

42.     The injuries and damages alleged herein are a direct, proximate, and foreseeable result of the dangerously defective condition of the Flooring Products, and of Lumber Liquidators' misrepresentations and manufacturing, marketing, and sales practices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action on behalf of himself and the following proposed National and State Classes under Rule 23 of the Federal Rules of Civil Procedure:

The National Class (represented by Plaintiff Stacy Vickery) consists of:

*All persons and/or entities in the United States who purchased laminate and/or engineered wood flooring manufactured in China for Lumber Liquidators which has formaldehyde levels that are higher than those appearing on the products' CARB labeling manufactured by or for Lumber Liquidators since 2010, or who own a home or other structure in the United States in which the Lumber Liquidators Flooring Products were installed since 2010.*

The Tennessee Class (represented by Plaintiff Stacy Vickery) consists of:

*All persons and/or entities in Tennessee who purchased laminate and/or engineered wood flooring manufactured in China for Lumber Liquidators which has formaldehyde levels that are higher than those appearing on the products' CARB labeling manufactured by or for Lumber Liquidators since 2010, or who own a home or other structure in Tennessee in which the Lumber Liquidators Flooring Products were installed since 2010.*

44. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Classes may be expanded or narrowed by amendment or amended complaint. Specifically excluded from each of the proposed Classes are each of the Defendants and their officers, directors, agents, trustees, subsidiaries, trusts, representatives, employees, principals, servants, partners, and joint venturers; entities controlled by Defendants; and Defendants' successors, assigns, or other entities related to or affiliated with Defendants.

45. The members of each Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that each proposed Class contains hundreds or thousands of members. The precise number of Class members is unknown to the Plaintiff. The more accurate number of Class members is known by Lumber Liquidators and/or its distributors. Class members may be notified of the pendency of this action by first class mail, electronic mail and/or by published notice.

46. The claims of Plaintiff and the Class members rely upon common questions of law and fact that are susceptible to common proof leading to common answers. Such common

questions of law or fact predominate over any questions affecting only individual Class members. These common legal and/or factual questions include, but are not limited to, the following:

(a)     Whether the Flooring Products were defectively designed and/or manufactured and/or misrepresented as to their formaldehyde levels;

(b)     Whether Lumber Liquidators knew or reasonably should have known about the misrepresentations prior to selling the Flooring Products to Plaintiff and the Classes;

(c)     Whether Lumber Liquidators failed to disclose the design and/or manufacturing defects and/or labeling defects of the Flooring Products;

(d)     Whether Lumber Liquidators breached express warranties relating to the Flooring Products to Plaintiff and the Classes;

(e)     Whether Lumber Liquidators breached implied warranties relating to the Flooring Products to Plaintiff and the Classes;

(f)     Whether Lumber Liquidators was unjustly enriched; and

(g)     Whether Plaintiff and the Classes have sustained monetary losses and/or physical injuries from the Lumber Liquidators Flooring Products, and, if so, the proper measure of those losses and injuries.

(h)     Whether Lumber Liquidators should be held strictly liable for the design and/or manufacturing and/or labeling defects of the Flooring Products;

(i)     Whether Lumber Liquidators was negligent for the design and/or manufacturing and/or labeling defects of the Flooring Products;

(j)     Whether Lumber Liquidators should be held liable for its failure to warn of the the design and/or manufacturing and/or labeling defects of the Flooring Products.

47.     Plaintiff's claims are typical of the claims of the respective Classes he seeks to represent in that Plaintiff and the Classes purchased the dangerously defective Flooring Products

and/or were owners of homes or structures in which the Flooring Products were installed. Moreover, Plaintiff, like the Classes, have suffered damages and/or personally injuries as a proximate result of Lumber Liquidators' misconduct as described herein.

48.     Plaintiff will fairly and adequately protect the interests of the Classes.  Plaintiff has retained counsel highly experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Classes.

49.     A class action is superior to all available means for the fair and efficient adjudication of this controversy. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system with respect to the resolution of the issues set forth in this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court.  This action presents no unusual management difficulties.

50.     The claims asserted herein are applicable to Plaintiff and all consumers, whether individuals or entities, throughout the various States of the Plaintiff and Class Members who purchased the Lumber Liquidators Flooring Products.

51.     Adequate notice can be given to Class members directly using information maintained in Lumber Liquidators' records and/or through notice by publication.

**FIRST CAUSE OF ACTION**
**Declaratory Relief**
**(Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.)**
(On behalf of Plaintiff and members of the Classes)

52.     Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

53.      Plaintiff alleges that there is an actual controversy, over which this Court has jurisdiction, existing between Plaintiff and Lumber Liquidators concerning their respective rights, duties and obligations for which Plaintiff's desire a declaration of rights under the express warranties.  Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

54.     Plaintiff contends that Lumber Liquidator's express warranties promise that its Flooring Products comply with CARB standards for formaldehyde emissions.  Plaintiff further alleges that Lumber Liquidators breached its express warranties causing Plaintiff and Class Members to receive Flooring Products worth less than flooring that conforms to the promise contained in the express warranties and by refusing remove and replace the defectively designed and/or mislabeled Flooring Products.

55.     Plaintiff desires a judicial determination and declaration of the parties' respective rights, duties and obligations under the express warranties, and specifically that Plaintiff and the Class are entitled to receive as damages the costs required to remove and replacement of the dangerously defective Flooring Products.

56.     A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiff and each Class member may ascertain their rights and duties under the express warranties.  At this time, Plaintiff and each Class member have a Flooring Product that is defective in design, materials and/or workmanship due to the increased level of formaldehyde emissions.  Plaintiff and each Class member suffered damages at the time of their

purchases and will be required or have paid to remove and replace the defective flooring as a result of Lumber Liquidators' business practices.

**SECOND CAUSE OF ACTION**
**Injunctive Relief**
(On behalf of Plaintiff and the members of the Classes)

57.     Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein and further allege as follows.

58.     Lumber Liquidators designed, manufactured, produced, tested, inspected, marketed, distributed, and sold dangerously defective Flooring Products as described above.

59.     Lumber Liquidators continues to market, distribute, and sell dangerously defective Flooring Products and, upon information and belief, has done nothing to remedy the defect, has not issued any warnings about the dangers posed by the Flooring Products, nor has it offered to remove, recall, or replace Flooring Products already installed in the homes of consumers including Plaintiff and the Classes.

60.     The Flooring Products described herein poses an imminent risk to the health of consumers and the public.

61.     Plaintiff and Class Members have suffered actual damage and/or personal injuries, or are in immediate risk of suffering injury and loss due to the dangerously defective Flooring Products.

62.     Lumber Liquidators should be required to take corrective action to remedy the serious and immediate risks its Flooring Products pose, including: a nationwide recall to remove and replace the dangerously defective Flooring Products; issuing warnings and/or notices to consumers concerning the Flooring Products and the health risks they pose; and, if Lumber

Liquidators has not already done so, immediately discontinuing the manufacture, production, marketing, distribution, and sale of the dangerously defective Flooring Products.

## THIRD CAUSE OF ACTION
### Breach of Express Warranty
(On behalf of all Plaintiff and members of the Classes)

63.     Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein and further alleges as follows:

64.     Plaintiff purchased approximately 1,400 square feet of "St. James Nantucket Beech 12 mm Laminate Flooring" from Lumber Liquidators to have installed in his personal residence.

65.     Lumber Liquidators expressly warranted, through its website and labeling, that the Flooring Product complied with the CARB standard.  Labeling on the Flooring Products indicate they comply with strict formaldehyde emission standards promulgated by CARB by stating: "California 93120 Phase 2 Compliant Formaldehyde."

66.     Lumber Liquidators breached its warranty because Plaintiff did not receive a Flooring Product that was free of defects and that complied with the CARB standard. Specifically, the Flooring Products, manufactured, packaged, and labeled under the direct supervision and control of Lumber Liquidators, emit toxic levels of formaldehyde, and are non-compliant with the maximum levels of formaldehyde allowed by the CARB standard.

67.     The defect in the Flooring Products is latent and not discoverable on reasonable inspection.  As such, Lumber Liquidator's express warranty fails in its essential purpose.

68.     In addition, because the Flooring Products contain a latent defect, any warranty limits are unconscionable.

69.     As a direct, proximate and foreseeable result of Lumber Liquidator's breach of its express warranties, Plaintiff and the Class members have been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
**Breach of Written Warranty**
**(Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*)**
(On behalf of all Plaintiff and members of the Classes)

70.     Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein and further alleges as follows.

71.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

72.     Plaintiff is a "consumer" within the meaning of Magnuson-Moss Act, 15 U.S.C. § 2301(3).

73.     Lumber Liquidators is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Act, 15 U.S.C. §§ 2301(4)-(5).

74.     The dangerously defective Flooring Products at issue in this lawsuit are "consumer products" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(1).

75.     15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

76.     Lumber Liquidators' express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).  The defective Flooring Products' implied warranties are covered under 15 U.S.C. § 2301(7).

77.     Lumber Liquidators breached these warranties as described in more detail above, but generally by manufacturing and distributing Flooring Products that are defective in design, materials and workmanship and that are likely to cause illness, injury and death to consumers;

providing dangerously defective Flooring Products not in merchantable condition and which present an unreasonable risk of harm to consumers and are not fit for the ordinary purpose for which the Flooring Products are used; refusing to repair or replace, free of charge, the dangerously defective Flooring Products; and not curing defects and nonconformities once they were identified.

78. Plaintiff has had sufficient dealings with Lumber Liquidators through its written warranties to establish privity of contract between Lumber Liquidators, Plaintiff, and the members of the Classes. Notwithstanding this, privity is not required in this case because Plaintiff and the members of the Classes are intended third-party beneficiaries of Lumber Liquidators' implied warranties. Lumber Liquidators' dealers were not intended to be the ultimate consumers of the Flooring Products and have no rights under the warranty agreements provided by Lumber Liquidators; rather, the warranty agreements were designed for an intended to benefit the ultimate consumers. Finally, privity is also not required because Plaintiff's and the Class' Flooring Products are all defective instrumentalities due to the aforementioned defect.

79. The amount in controversy of Plaintiff's and each Class members' individual claim meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000.00 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

80. As a direct and proximate result of Lumber Liquidators' breach of written warranties, Plaintiff and the members of the Classes sustained damages and other losses in an amount to be determined at trial. Lumber Liquidators' conduct caused Plaintiff's and the members of the Classes' damages and accordingly they are entitled to recover damages, diminution in value, costs, attorney fees, rescission, and/or other relief as appropriate.

81.     Lumber Liquidators is liable to Plaintiff and the members of the Classes pursuant to 15 U.S.C. § 2310(d)(1), because it breached the implied warranty of merchantability. Specifically, the Flooring Products have a design defect that renders them incapable of performing their intended function.

82.     Lumber Liquidators also is liable to Plaintiff and the members of the Classes pursuant to 15 U.S.C. § 2310(d)(1), because it breached its written warranties to Plaintiff and the members of the Classes by failing to provide non-defective Flooring Products, and/or perform repairs/retrofits sufficient to render the Flooring Products non-defective during the warranty period despite knowledge of the design defect and the serious health risks it poses to Plaintiff and the members of the Classes.

83.     Plaintiff and the Class members gave Lumber Liquidators an opportunity to cure pursuant to 15 U.S.C. § 2310(e) by *inter alia*, repeated contacts with Lumber Liquidators over the defect as described herein which notified Lumber Liquidators of the defect present in all the Flooring Products purchased by Plaintiff and the members of the Classes, but Lumber Liquidators failed to provide them with non-defective Flooring Products.

84.     Further, when notified of the dangerously defective Flooring Products, it is Lumber Liquidators' practice to routinely deny liability for any damage caused by the defect.

85.     Even if this were not the case, requiring an informal dispute settlement procedure and/or to afford Lumber Liquidators a reasonable opportunity to cure its breach of written warranties to Plaintiff and the members of the Classes would be unnecessary and futile. At the time of sale to Plaintiff, Lumber Liquidators knew, should have known, or was reckless in not knowing of the defect, and Lumber Liquidators' knew of its misrepresentations concerning the Flooring Products' inability to perform as warranted, but nevertheless failed to rectify the

situation and/or disclose it the defect to Plaintiff and the members of the Classes. Moreover, the remedies available through any informal dispute settlement procedure would be wholly inadequate under the circumstances. Accordingly, and requirement under the Magnuson-Moss Act or otherwise that Plaintiff resort to any informal dispute settlement procedure and/or to afford Lumber Liquidators a reasonable opportunity to cure its breach of written warranties to Plaintiff is excused and, thereby, deemed satisfied.

86.     Plaintiff and the members of the Classes would suffer economic hardship if they had to replace their Flooring Products but did not receive the return of all payments made by them. Because Lumber Liquidators refuses to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiff and the members of the Classes have not re-accepted their dangerously defective Flooring Products by retaining them.

87.     Pursuant to 15 U.S.C. § 2310(d)(1), Plaintiff and the members of the Classes seek to revoke their acceptance of the Flooring Products, or, in the alternative seek all damages caused to them by Lumber Liquidators' breaches of implied and express warranties, which damages constitute the cost of replacing the dangerously defective Flooring Products with non-defective flooring, plus all costs Plaintiff and the members of the Classes reasonably incurred or will incur in removing and replacing the Flooring Products.

88.     In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the members of the Classes are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by Plaintiff and the members of the Classes in connection with the commencement and prosecution of this action.

89.     Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein and further alleges as follows.

90.     Lumber Liquidators was negligent in that it failed to use reasonable care when it designed, created, manufactured, assembled, labeled, tested, distributed and sold its dangerously defective Flooring Products.

91.     As the manufacturer and/or seller of a consumer product, Lumber Liquidators owed a duty to Plaintiff and the members of the Classes to provide a safe product, and a duty to provide a product that would perform as it was intended and expected.

92.     Lumber Liquidators breached each one of these duties by caused by designing, manufacturing and distributing dangerously defective Flooring Products containing unacceptably high, toxic levels of formaldehyde, a known carcinogen.

93.     As a direct and proximate result of Lumber Liquidators' negligence, lack of reasonable care, and other wrongful acts, Plaintiff and the members of the Classes sustained damages in order to, *inter alia*, repair/replace the dangerously defective Flooring Products, together with consequential and incidental damages.

94.     As a direct, proximate and foreseeable result of Lumber Liquidators' negligence, Plaintiff and the members of the Classes have been damaged in the aggregate, in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### Strict Liability-Design Defect and Failure to Warn
(On behalf of all Plaintiff and members of the Classes)

95.     Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein and further alleges as follows.

96.     Lumber Liquidators designed, manufactured, mislabeled, sold and/or distributed dangerously defective Flooring Products to Plaintiff and the members of the Classes.

97.     Flooring Products that Lumber Liquidators designed, manufactured, mislabeled, sold and/or distributed were defective in their design and/or manufacture. Further, the Flooring Products were defective when they left Lumber Liquidators' control.

98.     The Lumber Liquidators Products contained a non-obvious danger to consumers, and that consumers would not know to replace their dangerously defective Flooring Products without an instruction to do so.

99.     Lumber Liquidators knew that Plaintiff and the members of the Classes would use the Flooring Products without first inspecting them.  Lumber Liquidators failed to warn Plaintiff and the members of the Classes about the dangerous nature of the Flooring Products susceptibility to failure and warn them about their inherent risks of injury, illness and death.

100.     Lumber Liquidators is strictly liable to the Plaintiff and the members of the Classes because the Flooring Products it designed, manufactured, sold, mislabeled and/or distributed as described herein were defective due to being manufactured with excessive levels of formaldehyde, due to inadequate warnings and inadequate inspection and testing, and due to inadequate reporting regarding the results of quality-control testing and inspections, or lack thereof.

101. Had Plaintiff and the members of the Classes been adequately warned of the health risks inherent in the Flooring Products they would not have purchased and/or installed them in their homes and businesses.

102. As a direct and proximate result of the dangerously defective condition of the Flooring Products as designed, sold and/or distributed by Lumber Liquidators, Plaintiff and the members of the Classes have been injured and suffered damages.

## SEVENTH CAUSE OF ACTION
### Negligent Failure to Warn
(On behalf of all Plaintiff and members of the Classes)

103. Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein and further alleges as follows.

104. Lumber Liquidators designed, sold, mislabeled and/or distributed dangerously defective Flooring Products to Plaintiff and the members of the Classes.

105. Lumber Liquidators knew or reasonably should have known that their Lumber Liquidators Products were defective and/or were likely to cause injury, illness or death when used in a reasonably foreseeable manner by consumers like the Plaintiff and the members of the Classes.

106. Lumber Liquidators knew or reasonably should have known that Plaintiff and the members of the Classes would not realize that the Flooring Products were dangerously defective.

107. Lumber Liquidators failed to adequately warn of the potential risks from the Flooring Products or to instruct Plaintiff and the Classes on their replacement.

108. A reasonable manufacturer, distributor, assembler, or seller under the same or similar circumstances would have warned of these dangers and instructed the Plaintiff and the members of the Classes to replace the dangerously defective Flooring Products.

109. As a direct and proximate result of Lumber Liquidators' Products failure to provide adequate warnings, Plaintiff and the members of the Classes have been injured and suffered damages.

## EIGHTH CAUSE OF ACTION
### Breach of Express Warranty
### (Tenn. Code Ann. § 47-2-313)
(Plaintiff individually and on behalf of the Tennessee Class)

110. Plaintiff incorporates by reference and re-allege all paragraphs previously alleged herein and further allege as follows.

111. Lumber Liquidators is a "merchant" within the meaning of Tenn. Code Ann. § 47-2-313.

112. The Flooring Products are "goods" within the meaning of Tenn. Code Ann. § 47-2-313.

113. As fully pled above, Lumber Liquidators had knowledge of the defects alleged herein by Plaintiff and the Tennessee Class.

114. Despite knowledge of the defects alleged herein, at all times relevant, Lumber Liquidators expressly warranted in writing that the Flooring Products would be free from defects in materials and workmanship, and that they complied with the CARB standards.

115. By manufacturing and distributing Flooring Products containing unacceptably high, toxic levels of formaldehyde to consumers like Plaintiff and the Tennessee Class, Lumber Liquidators breached its express warranty to provide Flooring Products that were free from defects, safe for ordinary use and in compliance with the CARB standards..

116. Further, any "repairs" Lumber Liquidators offers do not remedy the defects with its Lumber Liquidators Products and are not adequate and cannot be adequate to remedy the issues caused by the defect.

117. Lumber Liquidators express warranties fail in their essential purpose because Lumber Liquidators has refused to provide any remedy within a reasonable time.

118. Also, as alleged in more detail herein, at the time Lumber Liquidators warranted and sold the Flooring Products, it knew they did not conform to its express warranties and were inherently defective, and it wrongfully and fraudulently misrepresented and/or concealed material facts regarding the dangerously defective Flooring Products.

119. Accordingly, Plaintiff and the members of the Tennessee Class are not limited to any limited warranty of "repair" and they seek all remedies allowed by law.

120. As more fully detailed above, Lumber Liquidators was on notice of the dangerously defective nature of the Flooring Products but failed to provide a defect-free Flooring Product to Plaintiff and the Tennessee Class members.

121. As a direct and proximate result of Lumber Liquidators' breach of its express warranties, Plaintiff and members of the Tennessee Class members have been injured and suffered damages.

## NINTH CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability
### (Tenn. Code Ann. § 47-2-314)
(Plaintiff individually and on behalf of the Tennessee Class)

122. Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein and further allege as follows.

123. Lumber Liquidators is a "merchant" within the meaning of Tenn. Code Ann. § 47-2-314.

124. The Flooring Products are "goods" within the meaning of Tenn. Code Ann. § 47-2-314.

125.    Lumber Liquidators' implied warranty of merchantability accompanied the sale of the Flooring Products to Plaintiff and members of the Tennessee Class.

126.    Lumber Liquidators, by implication, warranted that the Flooring Products were fit for ordinary use.

127.    The dangerously defective condition of the Flooring Products made them unfit for the ordinary purposes for which the goods are used. Therefore the Flooring Products are not fit for ordinary use.

128.    As set forth herein, any effort by Lumber Liquidators to disclaim or otherwise limit its responsibility for the dangerously defective Flooring Products is unconscionable under all of the circumstances, including because of Lumber Liquidators' knowledge that the Flooring Products were unfit for normal use.

129.    Lumber Liquidators has breached its implied warranty of merchantability and is liable to Plaintiff and the members of the Tennessee Class.

130.    Plaintiff and the Tennessee Class have provided notice to Lumber Liquidators regarding the problems they experienced with the Lumber Liquidators Products and, notwithstanding such notice, Lumber Liquidators has failed and refused to remedy the problems. Further, Lumber Liquidators had actual knowledge of the defect.

131.    As a result of Lumber Liquidators' breach of the implied warranty of merchantability, Plaintiff and members of the Tennessee Class members have been injured and suffered damages.

## TENTH CAUSE OF ACTION
### Unjust Enrichment
(On behalf of all Plaintiff and members of the Classes)

132. Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein and further allege as follows.

133. Substantial benefits have been conferred on Lumber Liquidators by Plaintiff and the members of the Tennessee Class by dangerously defective Flooring Products, and Lumber Liquidators knowingly and willingly accepted and enjoyed those benefits.

134. Lumber Liquidators knew or should have known that payments received from Plaintiff and the members of the Tennessee Class for the Flooring Products were paid with the expectation that the Flooring Products would perform as represented.

135. Lumber Liquidators' retention of these benefits is inequitable.

136. Plaintiff and the members of the Tennessee Class are entitled to recover from all amounts wrongfully unjustly collected and improperly retained by Lumber Liquidators, plus interest.

137. As a direct and proximate cause of Lumber Liquidators' wrongful conduct and unjust enrichment, Plaintiff and the members of the Tennessee Class are entitled to an accounting, restitution, attorneys' fees, costs and interest.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of the members of the respective Classes, prays for judgment against the Defendants as follows:

A. An Order certifying the proposed Classes and appointing Plaintiff and his counsel to represent the respective Classes;

B. An Order declaring the Lumber Liquidators Products to be defective;

C.      An Order declaring that the Lumber Liquidators Products pose a risk of failure to consumers and the public;

D.      An Order awarding injunctive relief by requiring Lumber Liquidators to take corrective actions including notification, recall, replacement, or to establish a fund in order to make necessary repairs to correct the defects found in the Flooring Products as alleged herein; and/or replacement of the dangerously defective Flooring Products;

E.      A judgment awarding Plaintiff and the members of the Classes of all damages associated with the repair, retrofitting and/or replacement of the dangerously defective Flooring Products, in an amount to be proven at trial;

F.      A judgment awarding Plaintiff and the members of the Classes of all damages associated with property damage suffered as a proximate result of the dangerously defective Flooring Products, in an amount to be proven at trial;

G.      A judgment awarding Plaintiff and the members of the Classes of all damages associated with personal injury suffered as a proximate result of the dangerously defective Flooring Products, in an amount to be proven at trial;

G.      A judgment awarding Plaintiff and the members of the Classes of all damages associated with loss of value and/or reduced value of the dangerously defective Flooring Products and less of the benefit of the bargain suffered as a proximate result of the design defect, in an amount to be proven at trial;

H.      Restitution as authorized by law;

I.      Punitive damages as authorized by law;

J.      Specific performance under Lumber Liquidators' Express Warranties;

K.      A judgment awarding attorneys' fees and costs, as provided by law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the class;

L.      Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and

M.      Such other and further relief as this Court may deem just, equitable, or proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

RESPECTFULLY SUBMITTED,

s/Gregory F. Coleman
Gregory F. Coleman (TN BPR 014092)
Lisa A. White (TN BPR 026658)
Mark E. Silvey (TN BPR 013415)
GREG COLEMAN LAW PC
Bank of America Center
550 Main Avenue, Suite 600
Knoxville, Tennessee 37902
T:  865-247-0080
F:  865-522-0049
greg@gregcolemanlaw.com
lisa@gregcolemanlaw.com
mark@gregcolemanlaw.com

Shanon J. Carson
(to be admitted *pro hac vice*)
Russell D. Paul
(to be admitted *pro hac vice*)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
T:  215-875-3000
F:  215-875-4604
scarson@bm.net
rpaul@bm.net

Edward A. Wallace
(to be admitted *pro hac vice*)
Amy E. Keller
(to be admitted *pro hac vice*)
WEXLER WALLACE LLP
55 West Monroe Street, Suite 3300
Chicago, IL  60603
T:  312-346-2222
F:  312-346-0022
eaw@wexlerwallce.com
aek@wexlerwallace.com

**_Attorneys for Plaintiff and the Proposed Classes_**